HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

PILRANG BAE OWA,

        Plaintiff,

   v.

FRED MEYER STORES (Western region subsidiary Corp. of THE KROGER COMPANY); ADVANCED FRESH CONCEPTS FRANCHISE CORPORATION,

        Defendants.

CASE NO. 2:16-cv-1236-RAJ

ORDER

This matter comes before the court on Defendant Advanced Fresh Concepts Franchise Corporation's motion to confirm an arbitration award. Dkt. # 151. For the reasons that follow, the Court **GRANTS** the motion.

## BACKGROUND

Plaintiff Pilrang Bae Owa was the sole member and operator of Sakura Foods Everett, L.L.C., a limited liability company engaged in the production and sale of sushi and other raw fish products. *See* Dkt. # 92-1 at 17–20. On December 20, 2012, Plaintiff, in her individual capacity, entered into a franchise agreement with Defendant. Dkt. # 34-2

at 2. The franchise agreement permitted Plaintiff to operate a full-time food service counter selling sushi inside of a Fred Meyer grocery store in Everett, Washington. *Id*. at 34. The franchise agreement also included an agreement between Plaintiff and Defendant to arbitrate "any dispute that arises out of or relates directly or indirectly to this Agreement or the relationship of the parties hereto." *Id*. at 28. On January 23, 2013—a month after signing the franchise agreement in her personal capacity—Plaintiff created "Sakura Foods Everett, L.L.C." to execute the provisions of the franchise agreement. Dkt. # 34-3 at 8–11. On February 13, 2013, Plaintiff obtained a business license for her operation under the name "Sakura Foods Everett LLC." *Id*. at 13. The Washington Secretary of State administratively dissolved Plaintiff's limited liability company on May 1, 2014, but Plaintiff continued operating the business until Defendant terminated the franchise agreement on April 26, 2016. *See* Dkt. ## 170 at 1, 81-1 at 9.

On April 25, 2016—the day before Defendant terminated the franchise agreement—Plaintiff filed a lawsuit in the Superior Court for King County, Washington, alleging that Defendant and Fred Meyer violated state and federal anti-discrimination laws and committed common-law torts. Dkt. ## 1, 1-2 at 1–26. Plaintiff first amended her lawsuit on May 5, 2016, and again on July, 29, 2016. Dkt. # 1 at 2. On July 19, 2016, Defendant responded to Plaintiff's first amended complaint by filing an arbitration demand with the American Arbitration Association (AAA). Dkt. # 32 at 5. Defendant sought an arbitral declaration that Plaintiff was an independent business owner, and not an employee, to negate Plaintiff's ability to make a prima facie case for employment discrimination. *See id*. On August 5, 2016, Fred Meyer removed the case to federal court in accordance with 28 U.S.C. §§ 1332 and 1441. *Id*. On August 23, 2016, AAA agreed to arbitrate the dispute between Plaintiff and Defendant, noting that the relief sought by Defendant was within the scope of franchise agreement's arbitration provision. *See id*.

On September 1, 2016, with arbitration pending and the case removed to federal court, Defendant notified the Court of the anticipated arbitration. Dkt. # 22. On

September 22, 2016, Defendant petitioned the Court to either 1) compel arbitration and stay Defendant's participation in the case until completion of arbitration or 2) dismiss Plaintiff's complaint against Defendant outright. Dkt. # 32 at 5. On December 15, 2016, the Court granted Defendant's motion to compel arbitration, agreeing to stay Defendant's involvement in the case until the completion of arbitration. Dkt. # 66.

On June 29, 2017, Arbitrator Mary S. Jones issued a partial final award in favor of Defendant, finding that Plaintiff was not employed by Defendant. Dkt. # 81-1 at 22. Accordingly, the arbitrator dismissed Plaintiff's state and federal employment discrimination claims against Defendant. *Id*. at 23. The arbitrator did not rule on Plaintiff's tort claim in the partial final award; instead, the arbitrator reserved the disposition of the tort claim and assignment of liability for attorney's fees until the comprehensive final award. *Id.*

On November 28, 2017, the arbitrator issued the comprehensive final award. Dkt. # 92-1. The comprehensive final award denied Plaintiff relief for her intentional infliction of emotional distress (IIED) claim. *Id*. at 8–9. The final award also awarded fees to Defendant, as the prevailing party, in accordance with the franchise agreement and California law. *Id*. at 9–10; *see also* Cal. Civ. Code § 1717(a) (fees shall be awarded to the prevailing party where a contract provides for attorney's fees). Plaintiff claimed $71,000 of attorney fees for the arbitration, and Defendant claimed legal fees totaling $439,787. *Id*. at 10. Because of the disparity in expenditures, the arbitrator indicated that she gave "careful and serious consideration . . . [evaluating] the reasonableness of the attorney's fees and costs incurred by" Defendant. *Id*. When deciding how much to award Defendant, the arbitrator cited consideration of

> 1) the numerous causes of action and contrary positions taken by . . . [Plaintiff] at various times over the course of this dispute, 2) . . . [Defendant's] need for local Washington State

|   |   |
|---|---|
| 1 | counsel, and 3) the very different practice, presentation, |
| 2 | preparation and organizational styles of each party's counsel. |

*Id*. The arbitrator also noted that Defendant faced a claim of $6.8 million in punitive damages, and that Defendant could not take that potential liability "lightly." *Id*. Ultimately, the arbitrator awarded Defendant $373,126.98 in fees, basing her decision on "the totality of the circumstances in this case, the reasonableness of the fees . . . and the clear and unambiguous requirement in the Agreement mandating a fee [award] . . . to the prevailing party[.]" *Id*. at 10–11.

On November 29, 2017, AAA transmitted the signed comprehensive final award by e-mail to Plaintiff and Defendant. Dkt. # 152-1 at 86. On December 1, 2017, Defendant filed an arbitration status report informing the Court of the final arbitration award. Dkt. #92. On the same day, Plaintiff filed her own status report, informing the Court of her intention to move to vacate the arbitration award due to the arbitrator's partiality, corruption, and manifest disregard for the law. Dkt. # 94 at 1–2. On December 4, 2017, Plaintiff filed an additional status report reasserting her intention to move to vacate the award, claiming the arbitrator failed to give sufficient weight to Plaintiff's emotional state when deciding the IIED claim. Dkt. # 95. In addition to filing status reports with the Court, Plaintiff also petitioned AAA for a modification of the final arbitration award. *See* Dkt. # 152-1 at 80. On December 12, 2017, the arbitrator declined to modify the award, noting that "the merits on all the claims presented in this matter have already been decided." *Id*. AAA transmitted this decision to the parties on December 13, 2017. *Id*. at 88.

On March 15, 2018, Defendant filed the current motion to confirm the arbitration award. Dkt. # 151. Defendant argues that the comprehensive final arbitration award is conclusive on all issues between Plaintiff and Defendant, and that confirmation of the award is proper and in accordance with the Federal Arbitration Act (FAA). *Id*. at 7–9. Importantly, Defendant argues that any argument against confirmation of the award is

moot because Plaintiff failed to move to vacate, modify, or correct the award within statutory guidelines. *Id*. at 8.

Plaintiff's reply challenges the current motion, arguing that confirmation of the arbitration award is improper because 1) judgment against Sakura Foods, L.L.C. cannot be supported because the corporate entity no longer exists; and 2) the arbitrator exceeded her powers by granting attorney's fees on the IIED claim. Dkt. # 160 at 1–2. Plaintiff's reply also renews the allegations made in her post-arbitration status report that the arbitrator was partial, corrupt, and exhibited a manifest disregard for the law. *Id*. at 2–6; *see also* Dkt. # 94 at 1–2. Plaintiff supports those claims with a detailed declaration outlining numerous objections to the arbitration proceedings. *See* Dkt. # 159-2. Despite these allegations, Plaintiff notes that she "does not seek award vacatur" and only asks the Court "to use its inherent equity powers and on ground of public policy to vacate an award representing an extreme miscarriage of justice." Dkt. # 160 at 2.

Defendant's response simply asserts that Plaintiff's disagreement with the arbitrator's findings of facts or conclusions of law does not prohibit confirmation of the arbitration award. Dkt. # 162 at 3–5. Defendant also moves to strike several of Plaintiff's filings as irrelevant, arguing that Plaintiff waived these arguments because they were not filed in accordance within the temporal limitations of 9 U.S.C. § 12. *Id*. at 5–6. Plaintiff's surreply restates her grievances with the arbitration process, argues that judgment against Plaintiff's LLC is improper because the entity was administratively dissolved, and moves to strike several statements in Defendant's reply (Dkt. # 162) as false. *See* Dkt. # 169.

**LEGAL STANDARD**

When parties agree to arbitrate disputes, they agree to forego "the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration." *Mitsubishi Motors Corp. v. Soley Chrysler-Plymouth, Inc.*, 474 U.S. 614, 628 (1985). Arbitrators have limited authority, though, only having jurisdiction over issues 1) contractually agreed upon as topics for arbitration or 2) mutually submitted by

the parties for arbitration. *See Schoenduve Corp. v. Lucent Techs., Inc.*, 442 F.3d 727, 732 (9th Cir. 2006); *Coutee v. Barington Capital Grp., L.P.*, 336 F.3d 1128, 1136 (9th Cir. 2003) (arbitrator may award attorney's fees if both parties submit the issue to arbitration). If an arbitrator has jurisdiction over an issue, "[f]ederal law takes an expansive view of . . . [the arbitrator's] authority to decide disputes and fashion remedies." *Todd Shipyards Corp. v. Cunard Line, Ltd.*, 943 F.2d 1056, 1064 (9th Cir. 1991)

Congress limits the power of federal courts to review arbitration decisions to avoid "unnecessary public intrusion into private arbitration procedures." *Kyocera Corp. v. Prudential-Bache Trade Servs., Inc.*, 341 F.3d 987, 997–98 (9th Cir. 2003); *see also Schoenduve Corp*, 442 F.3d at 731 (Congress limits the power to review arbitration awards "to protect the overall purpose of arbitration and to avoid any tendency of a court to impute its own strict and rigid practices onto arbitration proceedings."). When reviewing arbitration awards, courts employ a "highly deferential" standard. *Coutee v. Barrington Capital Grp., L.P.*, 336 F.3d 1128, 1132 (9th Cir. 2003) (citing *Sheet Metal Workers' Int'l Ass'n, Local Union No. 359 v. Madison Indus., Inc.*, 84 F.3d 1186, 190 (9th Cir. 1996)).

Courts must grant motions to confirm arbitration awards unless the FAA prescribes a method for vacating, modifying, or correcting the award. *See* 9 U.S.C. § 9; *Schoenduve Corp.*, 442 F.3d at 731; *G.C. & K.B. Investments, Inc. v. Wilson*, 326 F.3d 1096, 1105 (9th Cir. 2003). A party wishing to challenge an arbitration award must petition the court and notify and serve the adverse party "within three months after the award is filed." 9 U.S.C. § 12; *see Sheet Metal Workers' Intern. Ass'n, Local No. 252 v. Standard Sheet Metal, Inc.*, 699 F.2d 481, 483 (9th Cir. 1983) (failure to challenge arbitration award within statutory time limitation bars assertion of any defenses in later proceedings). The challenging party must limit its complaint to the statutorily-permitted grounds enumerated in §§ 10 and 11 of the FAA. 9 U.S.C. § 9.

Section Ten of the FAA describes when a court may vacate an arbitrator's decision. *See* 9 U.S.C. § 10. A district court may make an order vacating an arbitration award where: the award was procured by corruption or fraud; the arbitrator was partial or corrupt; the arbitrator refused to hear material evidence; or the arbitrator exceeded his powers. *Id*. Arbitrators exceed their powers when making an arbitration award that is either "completely irrational" or exhibits a "manifest disregard" for the law. *Kyocera Corp. v. Prudential-Bache Trade Servs., Inc.*, 341 F.3d 987, 997 (9th Cir. 2003) (citations omitted); *see also Coutee*, 336 F.3d at 1132. An arbitrator's decision is completely irrational "where [the arbitration decision] fails to draw its essence from the agreement." *Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1288 (9th Cir. 2009) (quoting *Hoffman v. Cargill Inc.*, 236 F.3d 458, 461–62 (8th Cir. 2001)). An arbitrator's decision manifestly disregards the law when it is "clear from the record that the arbitrator recognized the applicable law and then ignored it." *Id*. at 1290 (quoting *Mich. Mut. Ins. Co. v. Unigard Sec. Ins. Co.*, 44 F.3d 826, 832 (9th Cir. 1995)).

Section Eleven of the FAA provides the court with the power to modify or correct an arbitration award. *See* 9 U.S.C. § 11. A district court may modify or correct an arbitration award where: there was a miscalculation of figures or an evident mistake in the award; the arbitrator awarded on an issue not submitted for arbitration; or the award is imperfect in form without affecting the merits of the dispute. *Id*.

An arbitrator's "factual determinations and legal conclusions" are generally upheld as long as they derive from the "essence" of the agreement. *Carpenters' Local Union No. 1478 v. Stevens*, 743 F.2d 1271, 1275 (9th Cir. 1984) (citation omitted). A key exception to this standard is that courts give no deference to arbitration awards that violate a "well-defined and dominant public policy." *Id*. When determining whether an arbitration award violates public policy, courts must look to laws and legal precedents instead of "general considerations of proposed public interest." *W.R. Grace & Co. v. Local Union 759*, 461 U.S. 757, 766 (1983). The power to set aside arbitration awards on

public policy grounds is very limited, though. *See United Paperworkers Intern. Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 43 (1987) (*W.R. Grace* does not "sanction a broad judicial power to set aside arbitration awards as against public policy."). The court must determine whether the "relief ordered by the arbitrator would conflict with other laws and legal precedents and *clearly violate an identifiable public policy.*" *ESCO Corp. v. Bradken Resources Pty Ltd.*, No. 10-788-AC, 2011 WL 1625815 at *9 (D. Or. Jan 31, 2011) (emphasis added).

Accordingly, the court takes a "narrow view" when considering whether to vacate an arbitrator's award on public policy grounds. *Stead Motors of Walnut Creek v. Auto. Machinists Lodge No. 1173, Int'l Ass'n of Machinists and Aerospace Workers*, 886 F.2d 1200, 1211 (9th Cir. 1989); *see also Arizona Elec. Power Co-op., Inc. v. Berkeley*, 59 F.3d 988, 992 (9th Cir. 1995) ("the public policy regarding fee collection by unethical lawyers is so fact-specific suggests that it is not sufficiently 'well defined and dominant' to fall within the public policy exception"); *Belves Co. v. Teamsters Local 986*, 791 F.2d 1391, 1392 (9th Cir. 1996) (the public policy of discouraging unlawful immigration is not a sufficient reason to overturn an arbitral award of reinstatement and back pay for terminated employees, notwithstanding the undocumented status those employees); *Iowa Elec. Light and Power Co. v. Local Union 204 of Int'l Bhd. of Elec. Workers (AFL-CIO)*, 834 F.2d 1424, 1425–27 (8th Cir. 1987) (public policy requiring "strict adherence to nuclear safety rules" meets the "narrow public policy exception" and warrants reversal of an arbitrator's order to reinstate an employee terminated for violating federal nuclear regulations). The party seeking to vacate an arbitration award on the grounds of public policy bears the burden of showing that "the award violates an explicit, well-defined, and dominant public policy." *Id*. (citing *Ministry of Defense of the Islamic Republic of Iran v. Gould, Inc.*, 969 F.2d 764, 770 (9th Cir. 1992)).

**DISCUSSION**

As an initial matter, the Court finds that Defendant property petitioned for confirmation of the arbitration award in accordance with 9 U.S.C. § 9. Before ruling on Defendant's motion, though, the court must address two major issues presented by the parties in their filings. First, the Court will examine whether Plaintiff's challenge of the arbitration award procedurally accords with the FAA. Second, the Court will examine whether Plaintiff carries her burden of showing a legal justification for overturning the arbitral award, notwithstanding any procedural defects of Plaintiff's challenge.

**a. Plaintiff's Challenge of the Arbitration Award**

Section Twelve of the FAA states that "[n]otice of a motion to vacate, modify, or correct an [arbitration] award must be served upon the adverse party or his attorney within three months after the award is filed or delivered." In the current action, the arbitrator delivered the final award on November 29, 2017. Dkt. # 152-1 at 86. Plaintiff requested reconsideration of the award from the arbitrator on December 1st, 4th, and 5th, but on December 12th, the arbitrator declined all three requests, leaving the final award intact. *See* Dkt. # 152-1 at 80. The arbitrator's denial of Plaintiff's petition for reconsideration finalized the arbitration award. *See Rocket Jewelry Box, Inc. v. Noble Gift Packaging, Inc.*, 157 F.3d 174, 176 (2d Cir. 1998) (to be considered final, arbitration award must resolve all issues submitted to arbitration definitively enough so that the issues do need further adjudication).

The parties' receipt of the arbitrator's decision on December 13th started the three-month clock to serve notice of a motion to vacate, modify, or correct the award. *See* Dkt. # 152-1 at 88. Plaintiff produces no evidence showing proper service on Defendant of a motion to vacate the award within three months of the final award, and the Court will not construe Plaintiff's filings to the Court on December 1st and 4th, indicating her intent to move to vacate the arbitration award, as a motion served on Defendant. *See* Dkt. ## 94, 95. Plaintiff's failure to timely serve a motion to vacate on Defendant renders Plaintiff's

challenge procedurally deficient; Plaintiff thereby waives all claims challenging the arbitration award. *See Sheet Metal Workers' Intern. Assn, local No. 252*, 699 F.2d at 483.

### b. Validity of the Arbitration Award

Plaintiff does not seek to vacate the arbitration award; instead, Plaintiff appeals to the Court's equitable powers to overrule the arbitration award on public policy grounds. Dkt. # 160 at 2. Even if Plaintiff properly served a motion to vacate or modify the arbitration award, her subsequent filings do not meet the threshold required for the Court to overrule the arbitrator's award. Plaintiff claims that the arbitrator was partial, corrupt, exceeded her powers by granting a "massive award of attorney fees," and exhibited a manifest disregard for the law. *See* Dkt. # 160 at 2–6. Additionally, Plaintiff claims that the arbitration award is improper because Plaintiff's business entity was defunct at the time of the award. *See* Dkt. # 159 at 1 (Sakura Foods Everett LLC tax account closed on April 27, 2016); Dkt. # 169 at 1 (Sakura Foods Everett, L.L.C. was administratively dissolved on May 1, 2014). After careful review, the Court finds that none of these claims are meritorious.

First, the record does not support Plaintiff's allegations involving arbitrator partiality and corruption. Plaintiff alleges arbitrator corruption because the arbitrator took time during a pre-arbitration conference call to discuss her fees, the arbitrator did not allow the live testimony of one of Plaintiff's witnesses, and the Plaintiff's attorney saw Defendant's attorney speak to the arbitrator during a break. Dkt. # 160 at 2–5. None of these, without more, indicate corruption. First, Plaintiff does not provide any evidence regarding the nature of the ex parte communications between Defendant's attorney and the arbitrator, nor does she allege any prejudice resulting from the ex parte communication. *See Employers Ins. Of Wasau v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 933 F.2d 1481, 1490 (9th Cir. 1991); *see also Mutual Fire, Marine & Inland Ins. Co. v. Norad Reinsurance Co.*, Ltd., 868 F.2d 52 , 57 (3d Cir. 1989) (a party that fails to demonstrate prejudice from ex parte communication with an arbitrator cannot support an

action for award vacatur). Second, Plaintiff is mistaken in her assertion that the arbitrator would not "permit the testimony" of witness Twiggy Lee because it was "inconvenient." Dkt. # 160 at 4. Dr. Lee testified telephonically on September 5, 2017. Dkt. # 92-1 at 3. Finally, the Court finds no fault—and certainly no corruption—with an arbitrator explaining her fees to the parties during a teleconference.

Similarly, the record does not support Plaintiff's claims of arbitrator partiality. Plaintiff alleges that the arbitrator allowed Defendant to file late pleadings, sustained every objection made by Defendant's attorney during the arbitration, and forced her attorney to make closing arguments before examination of all of Plaintiff's witnesses. Dkt. # 160 at 3–6. Again, Plaintiff fails to present any evidence supporting these claims in her numerous filings opposing award confirmation. Arbitrations are more informal than judicial proceedings, and Plaintiff's arguments regarding partiality are unavailing because her complaints stem from the very informality and expediency that make arbitration an attractive dispute resolution mechanism. *See Mitsubishi Motors Corp.*, 474 U.S. at 628.

Second, the record does not support Plaintiff's claims that the arbitrator abused her power by awarding a large amount of attorney's fees. Plaintiff claims that the franchise agreement provision concerning attorney's fees only concerned fees for contract disputes—not for disputes involving torts. Dkt. # 160 at 1. The franchise agreement, though, states that the arbitrator has the power to resolve "[a]ny dispute that arises out of or relates directly or indirectly to this Agreement or the relationship of the parties." Dkt. #34-2 at 28. This includes disputes in contract and in tort. Additionally, the franchise agreement explicitly provides the arbitrator with the power to award fees and costs to the prevailing party in an arbitration. *Id.* at 30.

Plaintiff makes another argument regarding the fees, denominating them as "privatized injustice." Dkt. # 160 at 2. Plaintiff attempts to make a public policy argument regarding the size of the Defendant's award for attorney's fees. This argument

is unpersuasive. Plaintiff fails to provide any justification demonstrating that an award of fees to a prevailing party in arbitration is an "explicit, well-defined, and dominant public policy" demanding the Court's reversal of the arbitration award. *See Stead Motors of Walnut Creek*, 886 F.2d at 1211. The Court does not favor the levy of large awards of attorney's fees against indigent parties, but when considering whether to overturn an arbitrator's determination, the Court must look to "laws and legal precedents instead of 'general considerations of proposed public interest.'" *See W.R. Grace & Co.*, 461 U.S. at 766. Plaintiff presents no law or legal precedent absolving her from contractual liabilities resulting from arbitration. *See* Dkt. # 159 at 2 (describing Plaintiff as "thoroughly destitute"). The Court, giving due deference to the arbitrator's decisions, upholds the arbitrator's award of Defendant's attorney's fees because 1) arbitrators have broad authority to fashion remedies and 2) the award derives from the "essence" of the franchise agreement. *See Carpenters' Local Union No. 1478*, 743 F.2d at 1275; *Todd Shipyards Corp.*, 943 F.2d at 1064.

Third, the record does not support Plaintiff's claims that the arbitrator exhibited a "manifest disregard for the law." Plaintiff alleges that the arbitrator ignored the Ninth Circuit standard for proving an IIED claim. Dkt. # 160 at 6; *see also Miller v. Fairchild Industries*, 797 F.2d 727, 737 (9th Cir. 1986) (prima facie case for IIED). Plaintiff is incorrect. Despite testimonial evidence that Plaintiff suffered emotional distress, it was within the arbitrator's power to rule in favor of Defendant if Plaintiff did not prove that Defendant's conduct was outrageous. Therefore, the Court does not find that the arbitrator manifestly disregarded the law. *See* Dkt. # 92-1 at 15.

Finally, the argument that the arbitration award is improper because Plaintiff's business entity, Sakura Foods Everett, L.L.C., was defunct at the time of the award is incorrect. Plaintiff entered into the franchise agreement in her individual capacity on December 20, 2012, over a month before registering her limited liability company (Sakura Foods Everett, L.L.C.) and obtaining a business license to operate as Sakura

Foods Everett LLC. *See* Dkt. # 34-2 at 32–33 (signed franchisee agreement and guaranty obligating Plaintiff personally for all franchisee obligations under the franchise agreement). Additionally, Plaintiff continued to perform duties under the franchise agreement for nearly two years after the administrative dissolution of the LLC. This course of performance under the franchise agreement undercuts Plaintiff's argument that the LLC, and not Plaintiff individually, is the proper subject of the arbitration award.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** the motion to confirm the arbitration award. Dkt. # 151. In light of the confirmation of the arbitration award, the Court **DENIES** each party's motion to strike over-length, false, and irrelevant filings as moot. Dkt. ## 162, 169.

Dated this 29th day of May, 2018.

The Honorable Richard A. Jones
United States District Judge

ORDER- 13